**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 04:22 PM January 23, 2014**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| STEVEN WAYNE PURSLEY AND | ) | CASE NO. 13-61707 |
| DIANA LYNN PURSLEY, | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtors. | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION (NOT** |
| | ) | **INTENDED FOR PUBLICATION)** |
| | ) | |

      The issue in the current case is the applicability of a change in the Ohio homestead exemption. Is the exemption the amount in effect when a debt is obtained or when a bankruptcy petition is filed? The Ohio legislature, in House Bill 479,[1] increased the homestead exemption to $125,000 per person ("Current Homestead"), with an effective date of March 27, 2013 ("Effective Date"), from a prior amount of $20,200.00. In adopting the Current Homestead the Ohio Legislature, in section 3 of House Bill 479 ("Section 3"), stated that the Current Homestead "shall apply to claims accruing on or after the effective date of this act." Steven Wayne Pursley and Diana Lynn Pursley (collectively, "Debtors") filed their bankruptcy petition on July 7, 2013, which is after the Effective Date. However, claims held by a number of unsecured creditors were incurred before the Effective Date. The court must determine if the Current Homestead should apply in a bankruptcy case commenced after the Effective Date, but where a number of creditors have debts that predate the Effective Date.

---

[1] H.B. 479, 129th Gen. Assemb. (Ohio 2012), available at
http://www.legislature.state.oh.us/bills.cfm?ID=129_HB_479.

1

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on April 4, 2012. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

The facts of this case are brief and uncontested. Debtors own real estate in Uniontown, Ohio with an estimated market value of $203,000.00 ("Real Estate"). Two banks hold mortgage liens against the property totaling $54,769.87, leaving approximately $148,200.00 in equity. Debtors have approximately $124,000.00 in unsecured debts, the majority of which were incurred before the Effective Date. Debtors' bankruptcy petition claims a homestead exemption of $265,800.00,[2] sufficient to protect their entire equity in the Real Estate. Toby L. Rosen, the chapter 13 trustee ("Trustee"), objects to Debtors' homestead exemption to the extent that the Current Homestead applies to debts incurred before the Effective Date.

Trustee makes two arguments in support of her position. First, Section 3 of Ohio House Bill 479 states in an uncodified section that "[t]he amendments made by this act . . . shall apply to claims accruing on or after the effective date of this act." According to Trustee, if the court applies the Current Homestead to debts obtained before the Effective Date, the court would be ignoring the intent of the legislature. Second, Trustee believes the Ohio Constitution mandates that the Current Homestead may only impact debts acquired after the Effective Date. Debtors counter by arguing that previous Ohio cases dealing with changes in exemptions have applied the exemptions in effect at the petition date. Debtors also argue that the uncodified language in Section 3 is unclear, is not controlling, and conflicts with the text of the Ohio Revised Code. The court notes the existence of an issue pertaining to the relationship between the bankruptcy code ("the Code") and state exemptions.

**Law and Analysis**

An exemption allows a debtor to protect certain property in the bankruptcy process by moving that property beyond the reach of most creditors. Owen v. Owen, 500 U.S. 305, 308 (1991). Both Ohio and the Code have created their own exemption regimes, often with differing categories and amounts. While federal law is normally superior to conflicting state law, U.S. Const. art. VI, cl. 2, the Code defers to state law in the realm of exemptions, specifically allowing a state to "opt-out" of the federal exemptions listed in § 522(d). 11 U.S.C. § 522(b). Ohio has opted out, only allowing a debtor domiciled in Ohio to take the Ohio exemptions. O.R.C. § 2329.662.

The Current Homestead allows a debtor to exempt his interest, "not to exceed one hundred twenty-five thousand dollars [$125,000.00], in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence." O.R.C. § 2329.66(A)(1)(b). The Prior Homestead, adopted by the Ohio General Assembly in 2008, allowed an exemption of $20,200.00. In re Depascale, 496 B.R. 860, 866 (Bankr. N.D. Ohio

---

[2] The Current Homestead is indexed for inflation, which explains why Debtors' claimed exemption is larger than $250,000.00.

2013).[3] The Current Homestead and the previous homestead are both indexed for inflation. O.R.C. § 2329.66(B). When the Ohio Legislature adopted the Current Homestead, Section 3 of the adopting legislation stated:

> The amendments made by this act to sections 2329.66 and 2329.661 of the Revised Code shall apply to claims accruing on or after the effective date of this act . . . . This act is not intended to impair any secured or unsecured creditors' claims that accrue prior to the effective date of this act.

While Section 3 appears to limit the Current Homestead to claims accruing after the Effective Date, Section 3 is "uncodified law." In Ohio, "uncodified law is law of a special nature that has a limited duration or operation and is not assigned a permanent Ohio Revised Code section number." Maynard v. Eaton Corp., 895 N.E.2d 145, 147 (Ohio 2008). Especially important is that uncodified law does *not* appear in the codified Ohio Revised Code. See Wa. Envtl Servs., LLC v. Morrow Cnty. Dist. Bd. Of Health, 2010 WL 2091465 (Ohio Ct. App. 2010). The purpose of codification is to put all of the laws and regulations in one place to allow for an individual to easily find all of the relevant law. In re McKinnon et al., 476 N.E.2d 1101, 1104 (Ohio Ct. Cl. 1984) rev'd on other grounds by In re Vaughn, 698 N.E.2d 148 (Ohio Ct. Cl. 1997). If an individual is required to look to both the codified law and the original statutory text, legal research becomes considerably more difficult, time consuming, and uncertain. See id. However, uncodified law *is* "part of the law of Ohio." In re Depascale, 496 B.R. at 870; Maynard, 895 N.E.2d at 147.

## I. The Bankruptcy Code § 522 and the Ohio Homestead Exemption

Exemptions allow a debtor to remove specific property from his bankruptcy estate (therefore protecting it from his creditors) for the debtor's own benefit. In re Jaber, 406 B.R. 756, 762 (Bankr. N.D. Ohio 2009). In other words, an exemption "is a privilege allowed by law to a judgment debtor, by which he may retain property to a certain amount or certain classes of property, free from all liability to levy and sale on execution, attachment, or bankruptcy." Black's Law Dictionary 571 (6th ed. 1999). Once property is deemed exempt, it is "immunized against liability," unless the debt falls within an exception listed within § 522(c). Owen, 500 U.S. at 308. Exemptions have often been controversial, as exemptions "spark accusations that debtors are shielding property from debts they can afford to pay." In re Little, 2006 WL 1524594, at *3 (Bankr. N.D.N.Y. 2006). The policy behind exemptions are "to protect a debtor from his creditors, to provide him with the necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge." In re Goodrich, 7 B.R. 590, 593 (Bankr. S.D. Ohio 1980). Exemptions also cause a rift between parties favoring state rights, "who favor the traditional state legislative prerogative to adjust exemptions to local economic conditions," and parties favoring federal power, who are interested in national uniformity in exemption amounts "based on conceptions of national equity." Id. (quoting Davis v. Davis (In re Davis), 170 F.3d 475, 478 (5th Cir. 1999)).

---

[3] Before the increase to $20,200.00, Ohio allowed a homestead exemption of only $5,000.00. In re Depascale, 496 B.R. at 866.

3

The United States Constitution gives Congress the power "to establish . . . uniform laws on the subject of bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4. While the Constitution gives Congress expansive bankruptcy power, in light of competing state and federal interests, the Code gives states three options for the application of exemptions: (1) only allow a debtor to use the Code exemptions listed in § 522(d); (2) only allow a debtor to exempt property under state law (in Ohio, found within O.R.C. § 2329.66); or (3) allow a debtor to choose between options (1) and (2). 11 U.S.C. § 522(b). If a state decides to opt out of the federal exemptions under § 522(b), the federal exemptions in § 522(d) are no longer applicable. While allowing a state to opt out of the federal exemptions illustrates substantial deference to state law, Congress nevertheless enacted a number of general rules pertaining to exemptions in the other sections of § 522 without any statutory indication that the rules were to apply only to the federal exemptions. See 11 U.S.C. § 522(c), (e)–(f). The scope of these "general rules" has caused disagreements between bankruptcy courts. See e.g. Owen v. Owen, 500 U.S. 305; CFCU Cmty. Credit Union v. Hayward, 522 F.3d 253 (2d Cir. 2009); Bruin Portfolio, LLC v. Leicht (In re Leicht), 222 B.R. 670, 677 (B.A.P. 1st Cir. 1998); In re Whalen-Griffin, 206 B.R. 277 (D. Mass. 1997); In re Scott, 199 B.R. 586 (Bankr. E.D. Va. 1996); Marinski v. Firstmark Finance Co. (In re Marinski), 9 B.R. 579, 582 (Bankr. N.D. Ohio 1981).

### a. The Bankruptcy Code and Ohio Case Law Apply Exemptions as of the Petition Date

The plain language of § 522(b) allows a debtor to exempt property under "Federal law . . . or State or local law that is applicable on the *date of the filing of the petition*." In re Pier, 310 B.R. 347, 354 (Bankr. N.D. Ohio 2004) ("The terms of § 522 provide that the petition date establishes whether a debtor is entitled to an exemption"). Additionally, O.R.C. § 2329.66(D)(1), the Ohio Revised Code section setting out the Ohio exemptions, states that exemptions should be determined as of the *petition date*. Bankruptcy policy also uses the filing date "as a guidepost in establishing a party's rights in bankruptcy." In re Pier, 310 B.R. at 354. The United States Supreme Court has also long favored the petition date as the proper time to measure exemptions. White v. Stump, 266 U.S. 310, 313 (1924) ("When the law speaks of property which is exempt and of rights to exemptions, it of course refers to some point of time. . . . [O]ne common point of time is intended and that is the date of the filing of the petition.").

Ohio case law pertaining to prior changes in exemption law also supports the position. See, e.g., In re Jaber, 406 B.R. 756; In re Lude, 291 B.R. 109 (Bankr. S.D. Ohio 2003); In re Marinski, 9 B.R. 579. Because the Current Homestead is a relatively new topic in Ohio bankruptcy law, the court was able to locate only one case analyzing the applicability of the Current Homestead. The United States Bankruptcy Court for the Northern District of Ohio in In re Depascale, 496 B.R. 860, ultimately concluded that the Current Homestead should be applied as of the petition date. In analyzing the issue, the court first noted that courts in Ohio have consistently applied bankruptcy exemptions in effect as of the petition date to debts that accrued before the petition date. Id. at 867–68. The court then moved to an analysis of the relevant statutes, noting that both §§ 522(b)(3)(A) and O.R.C. 2329.66(D)(1) suggest that the petition date should be used to determine the available exemptions. Id. at 869. Therefore, based on case history and statutory guidance, the court "[did] not see any impediment to applying the [Current

Homestead] amount to bankruptcy cases filed on or after the effective date of H.B. 479." Id. at 868. The court then moved to an analysis of House Bill 479, noting that while Section 3 may appear to be inconsistent with the court's holding, Section 3 is uncodified law that conflicts with the plain language of O.R.C. § 2329.66, is internally nonsensical, and is therefore inapplicable. See id. at 869–71.

The court agrees with the reasoning of In re Depascale. 496 B.R. at 867–68. The plain language of §§ 522(b)(3)(A) and O.R.C. 2329.66(D)(1), bankruptcy policy, and case law support the position that exemptions should be determined as of the *petition date*. However, Section 3 of House Bill 479 states that "[t]he amendments made by [the Current Homestead] shall apply to claims accruing on or after the effective date of this act." If the court assumes that Section 3 is applicable, which is the opposite of the decision in In re Depascale, the Code's requirement that exemptions should be determined as of the petition date would conflict with Section 3. The court must determine which law to apply: federal or state.

### b. The Bankruptcy Code Preempts Inconsistent State Law

In a showing of deference to state interests, the Code gives states the ability to opt out of the federal exemptions and create their own. However, courts have not always been consistent in the scope of the Code's grant of authority to the states in the field of exemptions. For example, does the Code's grant of authority to opt out of § 522(d) allow a state to create exemption laws inconsistent with the other portions of § 522? Compare In re Davis, 170 F.3d at 482 (holding that because Congress gave states discretion under § 522(b), the states are free to "supplement bankruptcy law with respect to exemptions"), and Clark v. Chicago Mun. Credit Union, 119 F.3d 540, 544 (7th Cir. 1997) ("Because Illinois has opted out of the federal exemptions, the Illinois scheme of exemptions is allowed to be quite inconsistent with the general goals of the bankruptcy code." (internal quotation marks omitted)), with Patriot Portfolio v. Weinstein (In re Weinstein), 164 F.3d 677 (1st Cir. 1999) ("States may not pass or enforce laws to interfere with or complement [the Code] to provide additional or auxiliary regulations." (quoting Int'l Shoe Co. v. Pinkus, 278 U.S. 261, 265 (1929)), and In re Conyers, 129 B.R. 470, 472 (Bankr. E.D. Ky. 1991) (holding that "the determination of the types of debts that remain collectible after bankruptcy from exempt property is controlled by federal rather than state law").

The resolution of this issue is determinative. Section 522(c) provides that "property exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . *before the commencement of the case*," except for certain exceptions not applicable in the current case.[4] (emphasis added). The clear wording of § 522(c) protects most exempt property from prebankruptcy debts. In re Leicht, 222 B.R. at 673. In essence, § 522(c) establishes the post-bankruptcy relationships between exempt property and debts that arose before the commencement of the bankruptcy case. Id. If § 522(c) is applicable, the value of Debtor's homestead exemption is immunized from debts that arose before the commencement of the case. In re Weinstein, 164 F.3d 677. Debtors' unsecured debts were incurred before the commencement of the case and are not the types of debts that are exceptions to the protections

---
[4] Section 522(c) does not protect exemptions from (1) debts for certain taxes and custom duties, (2) domestic support obligations, (3) liens that cannot be avoided, (4) liens that are not void, (5) tax liens, and (6) certain nondischargeable debts owed to federal depository institutions. In re Weinstein, 164 F.3d at 682.

5

provided by § 522(c). Therefore, if §522(c) is applicable in the current case, Section 3's mandate that the Current Homestead applies only to debts accruing after the Effective Date conflicts with the Code.

### i. Section 522(c) Is Applicable in Bankruptcy

While the applicability of § 522(c) has not been determined by the Supreme Court, in Owen, 500 U.S. 305, the Court addressed the applicability of § 522(f) once a state opts out of the federal exemptions. While Owen did not center on the applicability of § 522(c), much of the analysis remains relevant to the current case. In Owen, Florida decided to "opt-out" of the federal exemptions under § 522(b) and adopted a state statute that defined exempt property so judgment liens are immune from Florida exemptions. Id. at 307. Because § 522(f) states that a "debtor may avoid the fixing of a lien . . . to the extent that such lien impairs an exemption to which the debtor would have been entitled," the Supreme Court determined that the correct reading of the statute should not ask "whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he *would have been* entitled but for the lien itself." Owen, 500 U.S. at 310–11. The court also analyzed the question of whether states that opt out of the federal exemptions should be subject to § 522(f). The court determined that opt-out states and states that allow a debtor to choose the federal exemptions should be treated the same as "[n]othing in the text of § 522(f) remotely justifies treating the two categories of exemptions differently." Id. at 313. Section 522(f) "refers to the impairment of 'exemption[s] to which the debtor would have been entitled under subsection (b),' and that includes federal exemptions and state exemptions alike." Id. The court also rejected as "plainly not true" the creditor's argument that because Congress allows a state to create its own exemptions, courts must apply the exemptions with all of their "built-in limitations." Id. The court illustrated this point by noting that a state exemption that is available "unless waived" will be given full effect, even if the debtor actually waived the exemption. 11 U.S.C. § 522(e)–(f); Owen, 500 U.S. at 313. The court concluded by noting that the "opt out" policy is not absolute, but must be applied "along with whatever other competing or limiting policies the statute contains." Owen, 500 U.S. at 313.

While Owen helped to settle the issue, courts still remain split over the applicability of § 522, with most courts coming down in one of two camps. Some courts have decided that because Congress delegated the authority to create exemptions to the states under § 522(b), the states have broad authority with respect to exemptions, even if the state law contradicts the Code. See Davis, 170 F.3d at 482; Clark, 119 F.3d at 544. In contrast, the majority of courts, as well as most courts who have recently addressed the issue, have decided that states may define the "nature and amount" of their exemptions, but the state exemptions cannot supplement or contradict the Code. See, e.g., CFCU, 552 F.3d 253; In re Weinstein, 164 F.3d 677; In re Depascale, 496 B.R. at 872–73; In re Betz, 273 B.R. 313 (Bankr. D. Mass. 2002).

The court agrees with the majority position: States may define the nature and amount of their exemptions as allowed by § 522(b), but the other portions of § 522, except for § 522(d), remain applicable. In re Leicht, 222 B.R. at 677. The language of § 522 supports this conclusion. Section 522(b) allows a state to "opt out" of the federal exemptions listed in "subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not

6

so authorize." While § 522(b) allows a state to opt out of subsection (d), it does not mention a state's ability to opt out of the remainder of § 522. Additionally, the section effectuating the state's decision to opt out of the federal exemptions only specifically opts out of § 522(d) and makes no mention of the remaining sections. O.R.C. § 2329.662; see also In re Scott, 199 B.R. at 591 n.8. The text of § 522(c) also states that it applies to "property exempted under this section." The use of the word "section," as opposed to "subsection" (which is used elsewhere within § 522), further suggests that § 522(c) is intended to apply to all of § 522.

In re Depascale, the only Ohio case analyzing the Current Homestead, agrees, noting that the Code's definition of impairment in § 522(f) preempts any attempt by the Ohio General Assembly to put forth a different definition. 496 B.R. at 872–73. The court in In re Depascale first noted that the Code creates a uniform definition of impairment in § 522(f)(2)(A) without any reference to conflicting state law provisions. Id. at 873. Additionally, § 522(b) requires that property exemptions be determined as of the petition date. Id. Therefore, Section 3's requirement that the Current Homestead should not "impair any secured or unsecured creditors' claims that accrue prior to the effective date" is in direct conflict with the Code's definition of impairment in § 522(f). Id. The Sixth Circuit has taken the same position, noting that the definition of lien impairment must be determined by reference to § 522(f), even if state law defines impairment differently. Holland v. Star Bank, N.A. (In re Holland), 151 F.3d 547, 550 (6th Cir. 1998); see also 4 Collier on Bankruptcy, ¶ 522.02[2] (Alan N. Resnick & Henry J. Sommers eds., 16th ed. 2013).

The Supreme Court's decision in Owen also supports the court's position. The Supreme Court noted that there is "no basis for pronouncing [§ 522(b)'s] opt-out policy absolute, but must apply it along with whatever other competing or limiting policies the statute contains." Owen, 500 U.S. at 313. As noted above, the court reached a compromise between federal and state interests in adopting the opt-out provision of § 522(b). However, deference to state interests cannot supersede the ultimate purpose of the Code, which is to give the honest debtor a fresh start. Indus. Ins. Servs., Inc. v. Zick (In re Zick), 931 F.2d 1124, 1130 (6th Cir. 1991). While Congress allows a state to opt out of the federal exemptions, § 522(c) balances state and local interests, therefore limiting a state's ability to curtail a debtor's fresh start. In re Skjetne, 213 B.R. 274, 279 (Bankr. D. Vt. 1997) (noting that § 522(c) codifies the Code's policy of providing debtors a fresh start). Section § 522(c) therefore limits and competes with the opt-out policy found in § 522(b). Id. at 279 (citing Owen, 500 U.S. at 308).

For example, the court in In re Scott, 199 B.R. 586, was tasked with determining the applicability of § 522(c) to a state statute which allowed a creditor with a debt related to an intentional tort to recover from a debtor's exempt property. The court ultimately decided that the best reading of § 522 is that which allows a state to define the "nature and amount" of exemptions, but retain the applicability of the remainder of § 522. Id. at 593. The court reasoned that this approach:

> allows the states to opt out of section 522(d), as the Code expressly permits, while giving full effect to the remaining provisions of section 522 and deferring to Congress' enactments. Such a reading of the statute furthers the overall policy goals of the bankruptcy

7

> process such as ensuring uniformity under a federal distribution
> scheme, providing a debtor with a fresh start, and treating classes
> of creditors equally.

Id. Similarly, in In re Boucher, 203 B.R. 10, 13 (Bankr. D. Mass. 1996), the court was addressing whether a Massachusetts exemption law that subordinated the homestead exemption to a creditor's claims that were in existence before the debtor made a proper declaration of his homestead conflicts with the Code. The court summarized its position as follows:

> In light of the clear command of section 522(c) and the pre-
> emptive power of Congress under its constitutional authority to
> establish uniform bankruptcy laws, congressional approval of the
> use of state exemptions cannot be taken to extend to exemptions
> that protect debts left unprotected by section 522(c). Yet, Congress
> obviously wanted a debtor to have exempt property. The result is
> that the Debtor's election of the state exemption stands, but the
> state exception for prehomestead debts does not. Invalidating this
> exception to the exemption is much like voiding the waiver of a
> state exemption pursuant to section 522(e), notwithstanding the
> waiver's validity under state law. Courts have had no difficulty
> doing this.

Id.; see also In re Conyers, 129 B.R. 470, 472 (Bankr. E.D. Ky. 1991). One court has summarized the logic behind the argument as follows:

> (1) § 522(b) permits a debtor's use of state law exemptions; (2)
> once exemptions are invoked in a bankruptcy proceeding, § 522(c)
> dictates the extent to which exempt property may be called to
> answer for prebankruptcy debts; (3) § 522(c) generally provides
> that, after bankruptcy, exempt property is not liable for
> prebankruptcy debts . . . ; (4) § 522(c) preempts state laws that
> define the operative effect of exemptions more restrictively, or
> more expansively, than it does; and, (5) [if a state law] homestead
> statute purports to limit the operative effect of the homestead
> exemption against pre-acquisition . . . debts, it is preempted by §
> 522(c).

In re Leicht, 222 B.R. at 676.

The court concludes that state exemptions define the "nature and amount" of bankruptcy exemptions, but the remaining portions of § 522 remain applicable and preempt inconsistent state law. "This approach is commensurate with § 522(b)'s goal of balancing the state's interest in defining exemptions according to the needs and conditions of the locality, and the Code's 'fresh-start' policy and uniformity." In re Betz, 273 B.R. at 324; In re Scott, 199 B.R. 586 (Applying § 522(c) uniformly, even when a state opts-out of the federal exemptions, "furthers the overall policy goals of the bankruptcy process such as ensuring uniformity under a federal distribution

8

scheme, providing the debtor with a fresh start, and treating classes of creditors evenly").

In the current case, Debtors have claimed the Current Homestead, even though the majority of their debts were acquired before the Effective Date. While Section 3 limits the Current Homestead's applicability "to claims accruing on or after the effective date of this act," the grant of authority to the states in § 522(b) does not allow a state to pass statutes that conflict with the Code. Even assuming that Section 3 is applicable, its protection of prepetition debts, a category of debts that is not protected by § 522(c), conflicts with the Code.[5] In re Weinstein, 164 F.3d at 677.

### ii. The Debate Over When a State Exemption is "Applicable"

Even though § 522(c) applies even if a state opts out of the federal exemptions, a recent line of cases discusses whether a debt must fall within a state exemption before § 522 becomes applicable. CFCU, 552 F.3d 253; In re Lewis, 400 B.R. 417 (Bankr D. Vt. 2009). Section 522(b)(3)(A) allows debtors to exempt "any property that is exempt under . . . State or local law that is *applicable* on the date of the filing of the petition." (emphasis added). In CFCU, the Second Circuit decided that "applicable" within § 522(b) requires that the state law apply to the debtor at the time the bankruptcy petition was filed before the other provisions of § 522(c) become effective. CFCU, 552 F.3d at 259. However, other courts, such as In re Betz, 273 B.R. 313, relying heavily on the Supreme Court's decision in Owen and the First Circuit's decision in In re Weinstein, determined that a state exemption available on the petition date is subject to the requirements of § 522(c), regardless of state law language limiting the scope of the exemption. The court will evaluate the two competing methodologies below.

In CFCU, 552 F.3d at 256, the New York homestead was increased from $10,000.00 to $50,000.00. After the increased homestead became effective, the debtors in the case filed a bankruptcy petition claiming the increased homestead. Id. at 257. CFCU objected to the debtor's homestead to the extent it applied to debts acquired before the effective date of the new statute. Id. The Second Circuit in CFCU noted that "while federal law governs the date on which the exemptions comes into play, New York law governs the nature and scope of the exemptions." Id. at 259. In essence, CFCU adopted a two part test. First, the court must determine the "nature and scope" of the exemption under state law (whether the debtor may properly claim the property as exempt). Second, if the first step is satisfied, the court will then apply the other portions of § 522. In re LaVictoire, 2011 WL 1168288, at *4 (Bankr. D. Vt. 2011). However, if the property cannot

---

[5] As noted above, "uncodified law is law of a special nature that has a limited duration or operation and is not assigned a permanent Ohio Revised Code section number." Maynard, 895 N.E.2d at 147. While uncodified law does not appear in the Ohio Revised Code, it is "part of the law of Ohio." In re Depascale, 496 B.R. at 8. The court in In re Depascale, 496 B.R. at 869–72, analyzed Section 3 and concluded that because Section 3 conflicts with the plain language of O.R.C. § 2329.66 and is internally nonsensical, it should not be given effect. However, the Supreme Court of Ohio has used uncodified law to help determine the application of a statute, even when the text of the statute is unambiguous. See Maynard, 895 N.E.2d at 147–48 (using uncodified law to interpret a statute calculating prejudgment interest that is unambiguous on its face); Havel v. Villa St. Joseph, 963 N.E.2d 1270, 1278 (Ohio 2012) ("[N]o rule of construction precludes [the] review of uncodified law in an effort to ascertain legislative intent."). As the court finds that the Section 3 is inconsistent with the Code, and also that the Code preempts inconsistent state law, the court need not evaluate the applicability of Section 3.

be claimed as exempt under the state statute, then there is no conflict between the state statute and the Code because § 522 never comes into play. CFCU, 552 F.3d at 259; In re Lewis, 400 B.R. at 419. In In re Lewis, 400 B.R. 417, a bankruptcy court applied the CFCU methodology to determine the applicability of a statute that did not protect the homestead from debts in existence before the debtor filed proper notice. Id. at 418. According to the court, if a debt existed before the debtor filed the necessary homestead documentation, § 522(c) never comes into play because the property is not exempt under state law. Id. at 419. The court summarized their position as follows: "Because § 522(c) only applies to exempt property, there is no conflict in recognizing that state law may render property nonexempt to particular claims. As to such nonexempt property, § 522(c) never comes into effect." Id.; see also In re Banner, 394 B.R. 292 (Bankr. D. Conn. 2008).

Courts within the First Circuit conclude that state law defines the "nature and amount" of exemptions, but reaches a different conclusion as to when state exemption laws come into play. For example, in In re Betz, the court was tasked with determining how to apply a Massachusetts law that increased the state homestead exemption from $100,000.00 to $300,000.00, but explicitly subordinated the increase to preexisting liens. 273 B.R. at 315. The creditors in the case argued that determination of the amount of an exemption "is wholly outside the sphere of federal law when the state exemption scheme is at play." Id. The court rejected this argument, noting that:

> Whether the state excludes a category of debt from exemption protection altogether or whether it carves out an exception for the applicable dollar amount for the same category of debt is an irrelevant distinction given the overarching principle that conflicting state exemption limitations have no effect under the Bankruptcy Code. Either method of carving out exceptions ultimately reduces the debtor's homestead estate because under either method, this Court must first apply the statute's exceptions before determining what property is exempt. Under the Bankruptcy Code, both methods must fail because § 522(b)(2) does not incorporate all of a state's built-in limitations on exemptions. Rather, the state exemption scheme is merely the platform upon which federal policies operate.

Id. at 324–25. The court summarized its position by noting that § 522 applies "irrespective of whether the exemption statute's exceptions apply to a category of debt as a whole or to the dollar amounts of an exemption as applied to a particular category of debts." Id. at 325. Therefore, because § 522(c) protects exemptions from preexisting debts, the portion of the Massachusetts homestead statute allowing preexisting debts to impair exemptions "conflicts with § 522(c) and has no effect in this bankruptcy proceeding." Id. at 325. The court in In re Depascale "agree[d] with the persuasive reasoning of Betz" and adopted the same analysis. 496 B.R. at 872–73.

The court agrees with In re Depascale and In re Betz. Under the reasoning of CFCU, if, instead of changing the value of an exemption, an Ohio statute created a new category of debt that could forego exemption protection, § 522 would apply in its entirety. In this example,

10

because the entire exemption is included within the state law, § 522 is applicable to the entire exemption. When the new state-law exception attempts to remove the property from exemption protection, the Code invalidates the inconsistent state law. Similarly, if a state statute decreases an exemption and includes language limiting the decrease to debts acquired after the statute's effective date, § 522 would again be applicable to the entire exemption. In re Lewis noted that "§ 522(c) only applies to exempt property," but because the larger exemption is applicable under the state statute, the entire exemption is brought within § 522. Therefore, § 522 is applicable and invalidates inconsistent state law. The court agrees with In re Betz that this is an "irrelevant distinction." The court can think of no persuasive reason why the two above examples should lead to different outcomes than the situation in In re Lewis, especially considering the Code's overarching goal of giving a debtor a fresh start, as embodied in § 522.

## II. Application of the Current Homestead to Debts Accruing Before the Effective Date Does Not Violate the Ohio Constitution

Trustee also argues that the Ohio Supreme Court would likely conclude that the Current Homestead should only be applied to debts accruing after the Effective Date. Trustee cites to State v. Consilio, 871 N.E.2d 1167 (Ohio 2007), where the Ohio Supreme Court stated that:

> [i]t is well-settled law that statutes are presumed to apply prospectively unless expressly declared to be retroactive. It is also settled that the General Assembly does not possess an absolute right to adopt retroactive statutes. Section 28, Article II of the Ohio Constitution prohibits retroactive impairment of vested substantive rights. However, the General Assembly may make retroactive any legislation that is merely remedial in nature.

Id. at 1171. The Ohio Supreme Court has adopted a two-step test for retroactivity: (1) as a threshold matter, is the statute "expressly made" retroactive, and (2) if the statute is clearly retroactive, is the statute substantive or remedial in nature? Id. Therefore, Trustee argues that House Bill 479 not only failed to explicitly make the Current Homestead retroactive, Section 3 instead illustrates the General Assembly's intent that the statute should only apply prospectively. Trustee argues that because the Current Homestead is not expressly retroactive it fails the Consilio test. Debtors do not directly address the constitutional issue.

The Current Homestead is not a traditional retroactive statute. Instead, it is a statute that only applies to cases filed after the Effective Date (i.e. prospectively), but may still implicate the retroactivity clause of the Ohio Constitution. Longbottm v. Mercy Hosp. Clermont, 998 N.E.2d 419, 425 (Ohio 2013). "[T]he constitutional limitation against retroactive laws include[s] a prohibition against laws which commenced on the date of enactment and which operate[] in [the] future, but which, in doing so, divest[] rights, particularly property rights, which had been vested anterior to the time of enactment of the laws." Tobacco Use Prevention & Control Fund Bd. of Trs. v. Boyce, 941 N.E.2d 745, 750 (Ohio 2010) (internal quotation marks omitted). While the retroactivity clause bars laws that affect substantive rights, it "has no reference to laws of a remedial nature providing rules of practice, courses of procedure, or methods of review." Kilbreath v. Rudy, 242 N.E.2d 658, 660 (Ohio 1968). The Supreme Court of Ohio has defined

11

remedial and substantive statutes as follows:

> A statute is "substantive" if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligation[s], or liabilities as to a past transaction, or creates a new right. Conversely, remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right.

Ackison v. Anchor Packing Co., 897 N.E.2d 1118, 1123 (Ohio 2008); Longbottom, 998 N.E.2d at 425 (holding that the Ohio Constitution does not prohibit remedial statutes, which "merely affect[] the method and procedure by which rights are recognized, protected and enforced, and not the rights themselves" (internal quotation marks omitted)); State v. Williams, 952 N.E.2d 1108, 1110–11 (Ohio 2011) (holding that laws are remedial if they "merely substitute a new or more appropriate remedy for the enforcement of an existing right").

Additionally, a statute with retroactive effect will not violate the Ohio constitution if it impairs a right that does not have a reasonable expectation of finality. In re Depascale, 496 B.R. at 874 ("[A creditor] knew or should have known that the Ohio General Assembly periodically amends the exemption statute and, thus the amount of the [h]omestead [e]xemption was subject to change. . . . Accordingly, [a creditor] had an obligation to timely and diligently enforce its rights under Ohio law."); see also State ex rel. Matz v. Brown, 525 N.E.2d 805, 808 (Ohio 1988) (holding that because a felon has "no reasonable right to expect their [previously felonious] conduct will never thereafter be made the subject of legislation," a statute enacting gun control laws limiting a former felon's gun access can be applied retroactively). Finally, a statute designed to correct imperfections or gaps is classified as remedial. Ohio Const. Art. II, § 28 ("The General Assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contract, but may . . . cure[] omissions, defects, and errors . . . ."); Bielat v. Bielat, 721 N.E.2d 28, 33 (Ohio 2000) (noting that the Ohio Supreme Court has recognized "curative" law, designed to allow the General Assembly to retroactively fix "omissions, defects, and errors"). Therefore, if a law is found to be remedial, it can be applied to bankruptcy cases commenced after the statute's effective date even if the law alters legal rights accruing before the statute's effective date. Kilbreath, 242 N.E.2d at 660. Because the Current Homestead is only applicable to cases filed after the Effective Date, as long as the statute is remedial in nature, the Current Homestead is a constitutional enactment by the General Assembly.[6] Longbottom, 998 N.E.2d at 425–26.

Even armed with the above definitions, classifying statutes as either substantive or remedial can be difficult. For example, in Longbottom, the court was evaluating the applicability of a statute that changed both the time when prejudgment interest starts to accrue and the rate of accrual. 998 N.E.2d at 421–22. The case involved the medical malpractice claim of Mr. and Mrs. Longbottm, as well as their son Kyle, against Mercy Hospital. Id. at 421. After a trial, a jury

---

[6] While courts normally look to the intent of the General Assembly when addressing retroactivity, this court will not consider Section 3 because it is both "internally nonsensical and unworkable," In re Depascale, 496 B.R. at 870–72, and is inapplicable in bankruptcy.

found that Mercy Hospital negligently cared for Kyle and awarded $2,412,899.00 in damages and $830,774.66 in prejudgment interest. Id. In calculating prejudgment interest, the court applied the statute in effect when the complaint was filed, not the statute in effect when the malpractice occurred. Id. The statute in effect when the malpractice occurred allowed prejudgment interest from the date of the cause of action, while the new statute only allows prejudgment interest if the party required to pay the money admitted liability or engaged in the conduct with the specific goal of causing harm. Id. at 423. The new statute also changed the prejudgment interest rate from 10% to a rate tied to the federal short-term borrowing rate. Id. at 424. The Supreme Court of Ohio concluded that the statute was remedial in nature because it "neither destroys nor eliminates the right to prejudgment interest . . . ; rather, the amended statute affects only the method by which prejudgment interest is calculated." Id. at 426. In other words, "[b]ecause the amended statute does not eliminate the right to prejudgment interest but only modifies the remedy available, it applies to causes of action accruing before but filed on or after . . . the effective date of the statute." Id.

Most courts evaluating the constitutionality of changes in exemption laws have found that applying the exemptions in effect as of the petition date to debts acquired before the statute's effective date is not a constitutional violation. See e.g., In re Little, 2006 WL 1524594, at *9–11 (holding that New York's increased homestead statute should apply retroactively because remedial statutes are those "designed to correct imperfections in prior law" and increasing the value of the homestead corrects the harsh result where a debtor may be removed from their home in bankruptcy); CFCU, 552 F.3d at 264–65 (finding that increasing the value of the homestead exemption was remedial in nature because the update "reflect[s] current economic conditions and [] once again protect[s] debtors from losing their homes"); Bartlett v. Giguere (In re Bartlett), 168 B.R. 488, 495 (Bankr. D.N.H. 1994) (holding that because creditors should have the "general knowledge that homestead exemption laws are . . . periodically updated and changed in amount as inflation and other economic conditions warrant," creditors only have "vested rights" to the extent their rights are exercised before changes in bankruptcy law). Additionally, courts in Ohio, when viewing earlier statutory changes to the Ohio homestead exemptions, have not had constitutional problems applying the increased exemption to claims accruing before the new exemption's effective date. See, e.g., In re Jaber, 406 B.R. 756; In re Lude, 291 B.R. 109; Lucas v. Beneficial Fin. Co. of Ohio, 18 B.R. 179, 180 (Bankr. S.D. Ohio 1982); Marinski, 9 B.R. 579.

The court in In re Depascale, 496 B.R. 860, also addressed retroactivity, similarly concluding that the Current Homestead should be applied in cases filed after the Effective Date, but relating to claims arising before that date. The court did not find a constitutional violation for two reasons. First, because the past practice of Ohio bankruptcy courts was to apply any changes to exemption laws as of the petition date, more is needed to change court precedent than the unclear and "nonsensical" language of Section 3. Second, the increase to the homestead exemption does not deprive creditors of any substantive rights. Creditors "knew or should have known that the Ohio General Assembly periodically amends the exemption statute and, thus, the amount of the [h]omestead [e]xemption was subject to change." Id. at 874. While it is true that any change in the homestead statute could affect a creditor's ability to foreclose on a judgment, a creditor has "an obligation to timely and diligently enforce its rights under Ohio law." Id. A creditor's failure to foreclose on a debt before bankruptcy "should not deprive the [d]ebtor of the [h]omestead [e]xemption amount to which he is otherwise entitled." Id.

13

Based on the above reasoning, the Current Homestead is remedial in nature and can be constitutionally applied in cases filed after the Effective date, even to claims accruing before the Effective Date. While it is true that changing the homestead exemption may alter the money available to creditors, the change to the prejudgment interest calculation in Longbottom similarly affected an individual's monetary recovery and was found constitutional. In other words, changing the value of the homestead exemption neither destroys nor eliminates the rights of creditors, but instead only changes the amount. See Longbottom, 998 N.E.2d at 425–26. The court is also persuaded, as was the In re Depascale court, by the reasoning of In re Bartlett, which noted that while a creditor may have an "existing right" to move against a debtor's property, that right "also carrie[s] a corresponding obligation to assert and enforce that right promptly under the existing statutory provisions." 168 B.R. at 494–95. Ohio courts have recognized that a right is not vested if there is a not a "reasonable expectation of finality," which is not present in Ohio exemption law as evidenced by numerous statutory changes in amount. See In re Depascale, 496 B.R. at 866. Additionally, the reasoning of other courts, both inside and outside of Ohio, which have consistently decided that applying the exemptions in effect as of the petition date is not a constitutional violation further strengthens the court's position.

## Conclusion

For the reasons stated above, the court finds that § 522 is applicable and preempts inconsistent state law. Therefore, Section 3 of House Bill 479 conflicts with § 522(b) and (c) and is preempted. Based on the plain language of §§ 522 and O.R.C. 2329.66, Debtors' exemptions are those available as of the petition date. Additionally, application of the Current Homestead in this case is not a violation of the Ohio Constitution's prohibition on retroactive legislation. Consequently, Trustee's Objection to Debtors' Exemption is **DENIED**.

An order will be entered simultaneously with this opinion.

#     #     #

**Steven Wayne Pursley**
11115 Romsey Ave NW
Uniontown, OH 44685

**Diana Lynn Pursley**
11115 Romsey Ave NW
Uniontown, OH 44685

**Nicole L. Rohr**
Thrush & Rohr LLC
4410 22nd Street NW
Canton, OH 44708

**Toby L Rosen**
Toby L Rosen, Trustee

14

400 W Tuscarawas St
Charter One Bank Bldg, 4th Floor
Canton, OH 44702